## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GERALD HOLLEN,** individually, and on behalf of all others similarly situated, | : <br> : <br> : |
| | :    No.: 2:24-cv-06192-JS |
| Plaintiffs, | : |
| v. | :    Hon. Juan R. Sánchez |
| | : |
| **BIMBO BAKERIES USA, INC.,** | : |
| | : |
| Defendant. | : |
| | : |

### PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff Gerald Hollen, jointly by and through his attorneys and without opposition from Defendant, Bimbo Bakeries USA, Inc. ("Defendant"), respectfully moves this Court for entry of a proposed Order Approving the FLSA Settlement, attached hereto as Exhibit A**,** which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses the regular rate and donning and doffing claims of the applicable Settlement Collective Members with prejudice and without further costs or fees to any party. In support of this Unopposed Motion, Plaintiff states as follows:

1.      The instant action was filed on November 19, 2024, asserting a collective action claim for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count I); a Rule 23 claim for violations of the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* (Count II); a Rule 23 Breach of Contract claim (Count III): and a Rule 23 Unjust Enrichment claim (Count IV). [ECF No. 1].

2.      In general, Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and the putative collective members the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in

weeks during which they worked overtime hours. Plaintiff also alleged that Defendant maintains an unlawful compensation policy in connection with its failure to pay for time worked in connection with off-the-clock donning and doffing activities.

3.       After appearance of Defendant's Counsel and through mid-February 2025, the Parties held multiple meet and confer conferences during which they discussed, among other things: the geographic scope of Plaintiff's claims; the viability of Plaintiff's claims including application of those claims to various forms of incentive compensation paid by Defendant to employees; the viability of Plaintiff's off-the-clock claims in light of the existence of collective bargaining agreements at 50 of Defendant's 60 facilities at issue; the voluntary exchange of pay and timekeeping data to analyze the potential damages; and the possibility of exploring resolution via direct negotiations or with the assistance of a mediator.

4.       Ultimately, the Parties decided to submit the case to mediation with nationally respected wage and hour mediator Michael Russell.

5.       The Parties attended mediation on June 30, 2025. After several hours, the Parties were able to reach a partial settlement covering Plaintiff's regular rate claims.

6.       The Parties also agreed to attend a second mediation with Michael Russell to address Plaintiff's donning and doffing claims at Defendant's ten non-union facilities located at: San Luis Obispo, California; Orlando, Florida; South Saint Paul, Minnesota; Ithaca, New York; Valdese, North Carolina; Northumberland, Pennsylvania; Sayre, Pennsylvania; Orangeburg, South Carolina; Roanoke, Virginia; and Kent, Washington.

7.       The Parties attended the donning and doffing mediation on September 23, 2025. After several hours, the Parties were able to reach a settlement covering Plaintiff's donning and doffing claims.

8.       Over the next few weeks, the Parties negotiated and finalized the long-form

settlement agreement, which is now before the Court for approval. (Exh. B; hereinafter the "Settlement Agreement").

9. The detailed and material terms of the Settlement Agreement are discussed in the attached Brief in Support of the Unopposed Motion to Approve FLSA Settlement.

10. In sum, the Settlement Agreement provides that Defendants shall pay a Gross Settlement Amount of $2,284,225, inclusive of: (i) the issuance of monetary payments (Settlement Payments) to putative collective members (Settlement Collective Members); (ii) Service Award to the Named Plaintiff; (iii) payment for Attorneys' Fees and Litigation Expenses; and (iv) payment of settlement administration fees.

11. The Parties agree that the Settlement Agreement is a fair and reasonable resolution and compromise of a *bona fide* dispute over issues arising under Plaintiff's claims.

12. Thus, Plaintiff respectfully asks this Court to approve the Parties' Settlement Agreement in its entirety.

WHEREFORE, Plaintiff moves this Court for entry of the proposed Order Approving the Settlement Agreement, attached hereto as Exhibit A, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses the instant action initially without prejudice until all payments have been made under the Parties' Settlement Agreement, with the dismissal to be with prejudice automatically after the Parties file copies of the deposited or cashed settlement checks that will serve as opt-in consent forms; (4) approve as to form and content the settlement notice; and (5) appoint a settlement administrator to exercise the duties and perform the services set forth in the Parties' Settlement Agreement.

Date: October 17, 2025

Respectfully submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com

Adam S. Levy (PA Attorney No. 66866)
**Law Office of Adam S. Levy, LLC**
P.O. Box 88
Oreland, PA 19075
(267) 994-6952
adamslevy@comcast.net

Jonathan Melmed (CA SBN 290218)
Meghan Higday (332908) (CA SBN 334626)
**Melmed Law Group, P.C.**
1801 Century Park East, Suite 850
Los Angeles, CA 90067
(310) 824-3828
jm@melmedlaw.com
mh@melmedlaw.com

*Attorneys for Plaintiff and the Proposed Collective*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **GERALD HOLLEN,** individually, and on behalf of all others similarly situated, | **:**<br>**:**<br>**:** |
|  | **:** No.: 2:24-cv-06192-JS |
| Plaintiffs, | **:** |
| v. | **:** Hon. Juan R. Sánchez |
|  | **:** |
| **BIMBO BAKERIES USA, INC.,** | **:** |
|  | **:** |
| Defendant. | **:** |
|  | **:** |

**<u>BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
APPROVAL OF SETTLEMENT</u>**

## TABLE OF CONTENTS

**FACTUAL BACKGROUND** ………………………………………………………… 1

    I.     Introduction ............................................................................................................ 1

    II.    Settlement Terms and Documents ............................................................... 3

        A.  Settlement Payment Allocations .................................................. 3

        B.  Service Award ...................................................................... 5

        C.  Attorneys' Fees, Litigation Expenses and Settlement Administration Fees .......... 5

        D.  Release of Claims ................................................................. 5

        E.  Notice of Settlement of Lawsuit ................................................. 6

**LAW AND ARGUMENT** ........................................................................ 7

    I.     A One-Step Approval Process is Standard for FLSA Settlements ................................ 7

    II.    The Court Should Approve the Parties' Negotiated Settlement Agreement ................ 7

        A.  The Settlement Is a Compromise of a Bona Fide Dispute ................................. 9

        B.  The Settlement Is Fair and Reasonable ....................................... 9

        C.  The Settlement Furthers the Goals of the FLSA .......................... 12

    III.   The Service Award Should Be Approved as Fair and Reasonable ............................ 13

    IV.   The Court Should Approve the Proposed Settlement Notices ............................... 14

    V.    The Requested Attorneys' Fees Should Be Approved as Fair and Reasonable ....... 15

    VI.   Collective Counsel Is Entitled to Recover Their Reasonable Litigation Expenses ... 19

    VII.  The Settlement Administration Fees Should Be Approved ................................. 19

**CONCLUSION** ……………………………………………………………… 20

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Acevedo v. Brightview Landscapes, LLC*,
  2017 WL 4354809 (M.D. Pa. Oct. 2, 2017) ............................................................................. 10
*Alvarez v. BI Inc.*,
  2020 WL 1694294 (E.D. Pa. Apr. 6, 2020) .............................................................................. 18
*Arrington v. Optimum Healthcare IT, LLC.*,
  17 Civ. 3950, 2018 WL 5631625 (E.D. Pa. Oct. 31, 2018) .......................................... 16, 18, 19
*Bettger v. Crossmark, Inc.*,
  2015 WL 279754 (M.D. Pa. Jan. 22, 2015) ................................................................................ 8
*Brown v. TrueBlue, Inc.*,
  2013 WL 5408575 (M.D. Pa. Sept. 25, 2013) ............................................................................ 7
*Castagna v. Madison Square Garden, L.P.*,
  2011 WL 2208614 (E.D.N.Y. June 12, 2013) ......................................................................... 12
*Creed v. Benco Dental Supply Co.*,
  2013 WL 5276109 (M.D. Pa. Sept. 17, 2013) ......................................................................... 13
*Deitz v. Budget Renovations and Roofing, Inc.*,
  2013 WL 2338496 (M.D. Pa. May 29, 2013) ...................................................................... 11, 12
*Espenscheid v. DirectSat USA, LLC*,
  688 F.3d 872 (7th Cir. 2012) .................................................................................................. 14
*Fein v. Ditech Fin., LLC*,
  No. 16 Civ. 660, 2017 WL 4284116 (E.D. Pa. Sept. 27, 2017) ............................................... 14
*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ................................................................................................. 9, 10
*Halle v. W. Penn Allegheny Health Sys. Inc.*,
  842 F.3d 215 (3d Cir. 2016) ..................................................................................................... 7
*Hernandez v. Merrill Lynch & Co., Inc.*,
  2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ......................................................................... 13
*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ................................................................................................... 15
*In re Cendant Corp., Derivative Action Litig.*,
  232 F. Supp. 2d 327 (D.N.J. 2002) ......................................................................................... 16
*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) ............................................................................................. 19
*In re Chickie's & Pete's Wage & Hour Litig.*,
  2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ............................................................... 8, 10, 12, 13
*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .............................................................................. 11, 16, 18, 19
*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ................................................................................................... 18
*Kapolka v. Anchor Drilling Fluids USA, LLC*,
  18 Civ. 01007, 2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) ..........................................Passim
*Keller v. TD Bank, N.A.*,
  2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) ..................................................................15, 17, 19

ii

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*,
  2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) .......................................................... 13
*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) ..................................................................... 7, 8
*Matter of Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ............................................................................ 17
*Morris v. Affinity Health Plan, Inc.*,
  2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) ...................................................... 15
*O'Connor v. Oakhurst Dairy*,
  2015 WL 2452678 (D. Me. May 22, 2015) ............................................................ 7
*Owens v. Interstate Safety Serv., Inc.*,
  2017 WL 5593295 (M.D. Pa. Nov. 21, 2017) ....................................................... 8
*Prena v. BMO Fin. Corp.*,
  No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ............................... 7
*Singleton v. Domino's Pizza, LLC*,
  976 F. Supp. 2d 665 (D. Md. 2013) .................................................................... 14
*Spellman v. Am. Eagle Exp., Inc.*,
  2011 WL 4102301,n.1 (E.D. Pa. May 18, 2011) .................................................... 7
*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) .............................................................................. 13
*Yong Soon Oh v. AT & T Corp.*,
  225 F.R.D. 142 (D.N.J. 2004) ............................................................................. 19

## **Statutes**

29 U.S.C. § 201 ........................................................................................................ 1
29 U.S.C. § 216(b) ............................................................................................ 15, 19
43 P.S. §§ 333.101 .................................................................................................. 1

## **Rules**

Federal Rule of Civil Procedure 23 ..................................................................... 7, 8

## FACTUAL BACKGROUND

### I.     Introduction

On November 19, 2024, Plaintiff Gerald Hollen filed his Complaint, asserting a collective action claim for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count I); a Rule 23 claim for violations of the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* (Count II); a Rule 23 Breach of Contract claim (Count III): and a Rule 23 Unjust Enrichment claim (Count IV). [ECF No. 1]. In general, Plaintiff alleged that Defendant violated the FLSA and applicable state laws by failing to pay Plaintiff and the putative collective members the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in weeks during which they worked overtime hours. Plaintiff also alleged that Defendant maintains an unlawful compensation policy in connection with alleged failure to pay for time worked in connection with off-the-clock donning and doffing activities.

After appearance of Defendant's Counsel and through mid-February 2025, the Parties held multiple meet and confer conferences during which they discussed, among other things: the geographic scope of Plaintiff's claims; the viability of Plaintiff's claims including application of those claims to various forms of incentive compensation paid by Defendant to employees; the viability of Plaintiff's off-the-clock claims in light of the existence of collective bargaining agreements at 50 of Defendant's 60 facilities at issue; the voluntary exchange of pay and timekeeping data to analyze the potential damages; and the possibility of exploring resolution via direct negotiations or with the assistance of a mediator.

Ultimately, the Parties decided to submit the case to mediation with nationally respected wage and hour mediator Michael Russell.  The Parties attended mediation on June 30, 2025. After

several hours, the Parties were able to reach a partial settlement covering Plaintiff's regular rate claims and dismissing Plaintiff's donning and doffing claims for all unionized facilities, leaving only Plaintiff's donning and doffing claims for Defendants' non-unionized facilities.

The Parties also agreed to attend a second mediation with Michael Russell to address Plaintiff's donning and doffing claims at Defendant's ten non-union facilities located at: San Luis Obispo, California; Orlando, Florida; South Saint Paul, Minnesota; Ithaca, New York; Valdese, North Carolina; Northumberland, Pennsylvania; Sayre, Pennsylvania; Orangeburg, South Carolina; Roanoke, Virginia; and Kent, Washington. The Parties attended the donning and doffing mediation on September 23, 2025. After several hours, the Parties were able to reach a settlement covering Plaintiff's remaining donning and doffing claims.

The Settlement will cover the Named Plaintiff and all of the Settlement Collective Members who elect to participate in the Settlement by depositing their Settlement Payments. There are approximately 24,000 Settlement Collective Members.

Plaintiff now seeks this Court's approval of the Parties' Settlement Agreement, attached hereto as Exhibit B. In sum, the Settlement Agreement provides that Defendant shall pay a Total Settlement Amount of $2,284,225 (not including Defendant's share of employer side payroll taxes), inclusive of: (i) the issuance of monetary payments in a cumulative amount of $1,442,816.67 to Settlement Collective Members; (ii) payment of attorneys' fees in the amount of $761,408.33; (iii) reimbursement of litigation expenses in an amount not to exceed $13,000; (iv) payment of a service award to Named Plaintiff Gerald Hollen in the amount of $7,500; and (v) payment of settlement administration fees in the amount of $68,476.

The Parties agree that the Settlement is a fair and reasonable resolution and compromise of a *bona fide* dispute over issues arising under Plaintiff's regular rate and donning and doffing

2

claims. Thus, Plaintiff respectfully asks this Court to approve the Parties' Settlement Agreement in its entirety.

## II. <u>Settlement Terms and Documents</u>

Plaintiff submits the following settlement documents for the Court's approval or entry:

Exhibit A:     (Proposed) Order Approving Settlement

Exhibit B:     Settlement Agreement (with exhibits)

Exhibit C:     Declaration of Counsel Kevin J. Stoops

Exhibit D:     Declaration of Counsel Jonathan Melmed

Exhibit E:     Declaration of Adam Levy

### A. Settlement Payment Allocations

After deducting the awarded attorneys' fees, litigation expenses, service award, and settlement administration fees from the Total Settlement Amount, the remaining settlement proceeds will be divided 57% to the regular rate claim pool and 43% to the donning and doffing claim pool. (Exh. B, § 3.2(B)(a)).

The regular rate pool will be divided as follows:

> 95% for the Non-California Collective Settlement Amount and 5% for the California Collective Settlement Amount. This apportionment is based upon and equitably justified by a settlement for California state wage/hour and wage payment claims in *Juarez v. Bimbo Bakeries USA, Inc.*, Merced County Superior Court of California Case No. 22CV-02604, which had the effect of settling and precluding the regular rate claims in this Agreement that were based upon California state and local law for the California Collective.

(*Id.* at § 3.2(B)(d)).

Thereafter, the Settlement Administrator will divide the Non-California Collective Settlement Amount and the California Collective Settlement Amount by the total number of full or partial work weeks that the Non-California Collective and the California Collective worked for

Defendant during the Released Period to determine the "Per Work Week Amount." (*Id.* at § 3.2(B)(e)). The Settlement Administrator will then multiply the Per Work Week Amount by the total number of full or partial work weeks that each Non-California Collective and California Collective Member worked for Defendant during the Released Period to determine the Allocation Amounts. The settlement payment calculated for each Settlement Collective Member will be their Allocation Amount plus their Minimum Payment Amount (equal to $10). (*Id.* at § 3.2(B)(f)). The individual Settlement Payments will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). (*Id.* at § 3.3(C)).

The donning and doffing pool will be divided as follows: 1) $75 each to any employee who worked in Defendant's San Luis Obispo, California during the Released Period; and 2) the remaining proceeds to be reserved for payment to Settlement Collective Members who worked at Defendant's other non-union locations during the Released Period. (*Id.* at § 3.2(B)(a)). Thereafter, the Settlement Administrator will divide the Non-California Collective Settlement Amount by the total number of full or partial work weeks that the Non-California Collective worked for Defendant during the Released Period to determine the "Per Work Week Amount." (*Id.* at § 3.2(B)(b)). The Settlement Administrator will then multiply the Per Work Week Amount by the total number of full or partial work weeks that each Non-California Collective worked for Defendant during the Released Period to determine the Allocation Amounts. The settlement payment calculated for each Settlement Collective Member will be their Allocation Amount plus their Minimum Payment Amount (equal to $10). (*Id.* at § 3.2(B)(c)). The individual Settlement Payments will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). (*Id.* at § 3.3(C)).

### B.  Service Award

Defendant will pay a service award in the amount of $7,500 to Named Plaintiff Gerald Hollen, in addition to his Settlement Payment, for his service as Named Plaintiff and for his execution of a General Release. (Exh. B, § 3.2(C)).

### C.  Attorneys' Fees, Litigation Expenses and Settlement Administration Fees

Plaintiff's Counsel shall make an application to the Court for an award of attorneys' fees in the amount of $761,408.33 (33.3% of the Total Settlement Amount), plus an additional reasonable amount for the litigation expenses in an amount not to exceed $13,000. (Exh. B, § 3.2(A)). Any amount of the Attorneys' Fees and Litigation Expenses not approved by the Court shall be included as part of the Net Settlement Fund. (*Id.* at § 3.2(B)).

The Settlement Agreement also contemplates settlement administration fees in an amount not to exceed $68,476.  (*Id.* at § 2.2(A)).

### D.  Release of Claims

The negotiating of a settlement check by any Settlement Collective Member makes them a Participating Plaintiff and provides sufficient consideration for their release of claims. (Exh. B, § 1.18). Settlement Collective Members will have one hundred eighty (180) days after the Settlement Payments are mailed in which to deposit or otherwise negotiate their settlement checks. (*Id.* at § 2.5(G)). However, settlement checks not cashed or negotiated within 180 days may be reissued once if the Parties mutually agree, or if the Settlement Administrator determines that there is good cause to do so with respect to any particular settlement check(s). (*Id.* § 2.5(I)). If any Settlement Collective Member does not negotiate their settlement check within 180 days of issuance, or thirty (30) days after reissuance of the settlement check, whichever is later, the funds will be paid to *cy pres* beneficiary Philabundance Food Bank. (*Id.*).

The Settlement Collective Members who become Participating Plaintiffs will be subject to a release of regular rate wage and hour and donning and doffing claims under the FLSA and all applicable state or local laws arising within three years back from October 31, 2025 (or the date of approval if earlier). (*Id.* at §§ 1(1.20), 1(1.21), 1(1.22)). Each Settlement Payment issued to a Settlement Collective Member will contain the following release language on the back of the check:

> *By depositing or cashing this check, I agree to join the lawsuit titled Hollen et al. v. Bimbo Bakeries USA, Inc., Case No. 2:24-cv-06192 (the "Lawsuit"), in the United States District Court for the Eastern District of Pennsylvania, solely for the purpose of participating in the settlement of the Lawsuit. I also acknowledge that by depositing or cashing this check, I have reviewed and understand the release of claims against Bimbo Bakeries USA, Inc., as set forth in the Notice of Settlement that I received, and that I am knowingly and voluntarily agreeing to be bound by the release of claims in the Settlement Agreement.*

(*Id.* at § 2.5(J)).

### E.  Notice of Settlement of Lawsuit

The Parties will retain RG/2 Claims Administration LLC (the "Settlement Administrator") to perform the duties necessary to send "Settlement Notices" and the Settlement Payments to each Settlement Collective Member. "Settlement Notice" means the written notification that each Settlement Collective Member will receive, which explains the settlement and their right to participate, a copy of which is attached as Exhibit A to the Settlement Agreement**.** (Exh. B, at Exh. A and Exh. B).

## LAW AND ARGUMENT

### I.     A One-Step Approval Process Is Standard for FLSA Settlements.

Throughout the country, a one-step approval process is appropriate in FLSA settlements that do not include classes under Federal Rule of Civil Procedure 23 ("Rule 23").[1] *Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013) ("Once employees present a proposed settlement agreement to the district court pursuant to Section 216(b), the Court may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" (citation omitted)). This is because collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class actions. *O'Connor v. Oakhurst Dairy*, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."). "In contrast to class actions brought pursuant to Federal Rule of Civil Procedure 23, the FLSA requires collective action members to affirmatively opt in to the case." *Spellman v. Am. Eagle Exp., Inc.*, 2011 WL 4102301, at *1 n.1 (E.D. Pa. May 18, 2011). Where, as here, individuals are not part of the settlement unless they decide to participate in it, there is no need to require that the settlement provide for opt-outs or objections. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) (the "'opt-in' requirement . . . is the most conspicuous difference between the FLSA collective action device" and a Rule 23 class action).

### II.     The Court Should Approve the Parties' Negotiated Settlement Agreement.

Courts in the Circuit review FLSA settlements pursuant to the standards outlined in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354-55. *See In re Chickie's & Pete's*

---

[1] *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision).").

*Wage & Hour Litig.*, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014) (in the absence of Third Circuit precedent "district courts in this circuit have referred to the considerations set forth in *Lynn's Food Stores*"). A settlement "resolves a bona fide dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute.'" *Id.* at *2 (alterations in original) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). "An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial." *Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

Once the court is satisfied that an agreement resolves a bona fide dispute, the next step is a two-part analysis: "first, the court assesses whether the agreement is fair and reasonable to the plaintiff employee; second, it determines whether the settlement furthers or impermissibly frustrates the implementation of the FLSA in the workplace." *Bettger*, 2015 WL 279754, at *4 (internal quotation marks and citation omitted). While the Third Circuit has not directly addressed the considerations for determining the fairness and reasonableness of settlement agreements in FLSA collective actions, courts in the Circuit have applied the factors used for approving Rule 23 class settlements. *See, e.g.*, *Owens v. Interstate Safety Serv., Inc.*, 2017 WL 5593295, at *2 (M.D. Pa. Nov. 21, 2017) (district courts in the Third Circuit look to "the factors set out by the Third Circuit for approving class action settlements" when approving FLSA settlements). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the [collective] action through the

trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975) (ellipses and citations omitted) (the "*Girsh* Factors").

As discussed below, because the proposed Settlement Agreement resolves a bona fide dispute, represents a fair and reasonable resolution of that dispute in light of the *Girsh* Factors, and does not frustrate the goals of the FLSA, it should be approved.

### A.    The Settlement Agreement Is a Compromise of a Bona Fide Dispute

The settlement resolves a bona fide dispute. Plaintiff alleges Defendant failed to properly calculate the Settlement Collective Members' regular rate of pay (and corresponding overtime rates) in connection with various forms of non-discretionary compensation and bonuses. Additionally, Plaintiff claims that Defendant failed to pay for off-the-clock work performed in connection with donning and doffing activities. Defendant disputes: 1) that it improperly calculated Settlement Collective Members' overtime rates; 2) that the non-discretionary compensation at issue is subject to the FLSA's regular rate calculation; 3) that the Settlement Collective Members performed any compensable off-the-clock work; and 4) the amount of alleged damages owed to the Settlement Collective Members. (Exh. C, Stoops Decl. at ¶¶ 26, 27). Accordingly, the proposed settlement resolves a "bona fide" dispute of factual legal issues.

### B.    The Settlement Is Fair and Reasonable

Application of the *Girsh* Factors also weighs in favor of a finding that the Settlement is fair and reasonable.[2]

---

[2] Notwithstanding that the settlement agreement satisfies the *Girsh* factors, because the parties are represented by experienced counsel, employed an experienced mediator to assist them in negotiating their settlement, and reached their settlement agreement through the mediation process, the Court may begin with the presumption that the settlement is fair and reasonable. *See Kapolka v. Anchor Drilling Fluids USA, LLC*, 18 Civ. 01007, 2019 WL 5394751, at *3 (W.D. Pa. Oct. 22,

*First*, the complexity of the case and the likely duration of the litigation supports settlement approval. Specifically, absent settlement, the parties would have had to litigate nearly every aspect of Plaintiff's claims, including contested litigation over: 1) the legal treatment of multiple unique pay codes and a week-by-week analysis of alleged regular rate violations; 2) the compensability of the alleged off-the-clock activities; and 3) the amount of damages owed to the Settlement Collective Members, if any. "Settlement of the case now, while it is still in the earlier stages, allows both parties to avoid further legal expenses that would be significant if this case proceeded to trial and then potentially to appeals." *In re Chickie's & Pete's Wage and Hour Litig.*, 2014 WL 911718, at *3.

*Second*, the stage of proceedings and amount of discovery completed weigh in favor of approval. *Girsh*, 521 F.2d at 156. As noted above, the settlement of the Actions early on conserves the parties' and the Court's resources. With respect to the amount of discovery completed, the parties exchanged sufficient information during the settlement process to permit all sides to evaluate the risks of further litigation. (Exh. C, Stoops Decl. at ¶ 25); *See also, Acevedo v. Brightview Landscapes, LLC*, 2017 WL 4354809, at *10-11 (M.D. Pa. Oct. 2, 2017) (finding the third *Girsh* Factor weighed in favor of approval where parties had engaged in informal exchange of data and documents in advance of mediation); *Kapolka*, 2019 WL 5394751, at *5 (same). Moreover, prior to taking on these actions, Collective Counsel conducted a thorough investigation into the merits of the case, performing in-depth interviews with the Named Plaintiff and multiple opt-in Plaintiffs to understand their hours, wages and timekeeping practices, and conducted background research on Defendant's corporate structure and facilities. (Exh. C, Stoops Decl. at ¶¶

---

2019) ("[I]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." (internal quotation marks and citation omitted)).

20, 29). Thus, "the parties had an adequate appreciation of the merits of the case before negotiating" a resolution of the claims. *Deitz v. Budget Renovations and Roofing, Inc.*, 2013 WL 2338496, at *6 (M.D. Pa. May 29, 2013) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)).

*Third*, settlement is appropriate because a trial on the merits would involve significant risks for the Plaintiffs as to both liability and damages. Although Plaintiff believes he could ultimately establish Defendant's liability, Defendant could prevail on one or more of its defenses and avoid liability completely or limit liability to a two-year period. Defendant would also contend that its timekeeping practices and policies demonstrate its good faith effort to comply with the FLSA, which would preclude an award of liquidated damages. (Exh. C, Stoops Decl. at ¶¶ 26, 27).

*Fourth*, although Plaintiff believes that he would prevail on a motion for conditional certification, there is a risk that he would not succeed in maintaining a collective through trial. In addition to opposing conditional certification, Defendant would likely seek decertification based on alleged differences in pay, job duties, job locations, and time periods.

*Fifth,* the settlement amount represents very reasonable recovery, especially in light of the aforementioned litigation risks that Plaintiff faces. With respect to the regular rate clams,. Plaintiff calculated Defendant's maximum regular rate damages to equal $3,226,269, including damages for a third-year and full liquidated damages, and assuming all supplemental or incentive payments identified in the data Plaintiffs received were nondiscretionary and resulted in improper regular rate calculations, which Defendant denied. (Id. at ¶ 30). The portion of the Total Settlement Amount allocated for the release of the regular rate claims over 1/3 of the maximum amount of damages Plaintiffs could obtain if they succeeded in certifying a collective and every single putative collective member consented to join the case.. (Id. at ¶ 31).

11

The portion of the Total Settlement Amount allocated for the release of the donning and doffing claims provides each Donning and Doffing Collective Member for compensation approximately equal to 5 minutes of allegedly unpaid time per work day, without applying a discount for Defendant's numerous defenses. This is more than reasonable, considering that Defendant asserted that any unpaid time for donning and doffing (if any) amounted to no more than 1-2 minutes a day, as well as all of the challenges Plaintiffs faced to prevail on the donning and doffing claims as described above.. (Id. at ¶ 32).

Consequently, there can be no question that the settlement amount is completely reasonable, and marks a fair compromise. (*Id.* at ¶ 33). Because the *Girsh* Factors support the reasonableness of the settlement,[3] the settlement should be approved.

## C.    The Settlement Furthers the Goals of the FLSA

The public nature of the settlement assists with general FLSA compliance. Unlike confidential settlements, the Settlement Agreement does not frustrate the "implementation of the FLSA in the workplace." *In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *3. It is publicly available and there is no confidentiality provision. Plaintiff and the Settlement Collective Members may discuss the litigation and their claims with other workers, furthering the informational objectives of the FLSA. *See id.* (settlement agreement did not frustrate the purposes of the FLSA where the plaintiffs would "be permitted to discuss the matter with fellow employees and others").

---

[3] The second *Girsh* factor - "the reaction of the class to the settlement - is "not directly applicable in the context of an FLSA collective action, where the settlement class will consist of voluntary opt-in plaintiffs, all of whom wish to settle this matter in accordance with the terms of the proposed settlement agreement." *Kapolka*, 2019 WL 5394751, at *4 (quoting *Deitz*, 2013 WL 2338496, at *6). As to the seventh *Girsh* Factor, although Defendant may have been able to withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (E.D.N.Y. June 12, 2013) (citation and internal quotation marks omitted). Accordingly, the second and seventh factor do not preclude the Court from approving the settlement.

### III. The Service Award Should Be Approved as Fair and Reasonable.

Plaintiff requests a modest service award of $7,500 for Gerald Hollen for his service as Named Plaintiff and for his execution of a General Release. Courts routinely approve service awards equal to or greater than the awards requested here. *See, e.g.*, *Creed v. Benco Dental Supply Co.*, 2013 WL 5276109, at *7 (M.D. Pa. Sept. 17, 2013) (approving award of $15,000 to named plaintiff in FLSA collective action settlement); *Kapolka*, 2019 WL 5394751, at *13 (collecting cases and noting service awards range up to $12,500).[4]

Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming a litigant, and any other burdens sustained by plaintiffs, and are commonly awarded to those who serve the collective's interests. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011) ("The purpose of [service] payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." (citation and internal quotation marks omitted)); *see also Kapolka*, 2019 WL 5394751, at *13 (service awards "reward the public service of contributing to the enforcement of mandatory laws").

Here, the Named Plaintiff undertook substantial financial, reputational and personal risks. He assumed significant risk that "should the suit fail, [he could] find [himself] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012).

---

[4] *See also Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *3 (N.D. Ill. Sept. 16, 2016) ($10,000 service awards for assistance to collective early in lawsuit); *Hernandez v. Merrill Lynch & Co., Inc.*, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $12,500 to class representatives and $4,000 to an opt-in plaintiff in wage and hour action).

Additionally, Hollen risked retaliation from future employers for the benefit of the Settlement Collective Members. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer).

Named Plaintiff Hollen also took substantial actions to protect the interests of the Settlement Collective Members. Hollen sat for extensive pre-suit interviews, provided documents crucial to bringing the allegatioins of the collective, reviewed the claims presented, helped Plaintiff's counsel prepare for the mediations by providing information relevant to the claims and Defendant's defenses, made himself available for the mediations, and reviewed the Settlement Agreement. (Exh. C, Stoops Decl. at ¶ 57). Courts in this circuit have approved service awards for similar activities. *See, e.g.*, *Fein v. Ditech Fin., LLC*, No. 16 Civ. 660, 2017 WL 4284116, at *11 (E.D. Pa. Sept. 27, 2017), at *11 (awarding service payments where the plaintiffs "provided documents to class counsel, provided information concerning their experiences and Defendant's practices, supplied testimony and documents critical to investigation of the Class Members' claims, and made themselves available for the mediation").

Accordingly, the Court should approve the Service Award to Hollen in the total amount of $7,500 as provided in the Parties' Settlement Agreement.

## IV.    The Court Should Approve the Proposed Settlement Notices.

The Court should approve the proposed Settlement Notices because they provide accurate and timely notice of the settlement that will allow Settlement Collective Members to make an informed decision regarding whether to participate in this action. (Exh. B, at Exh. A and Exh. B). The proposed notices sufficiently inform Settlement Collective Members of the terms of the settlement, including the allocation formula and the scope of the release. *See Keller v. TD Bank,*

14

*N.A.*, 2014 WL 5591033, at *3 (E.D. Pa. Nov. 4, 2014) (approved notice and claim informed participants of the settlement, release of claims, allocation formula, and instructions for submitting a claim form); *see also Morris v. Affinity Health Plan, Inc*., 2011 WL 6288035, at *3 (S.D.N.Y. Dec. 15, 2011) ("The Proposed Notice is appropriate because it describes the terms of the settlement [and] informs the class about the allocation of attorneys' fees . . .").

### V.    <u>The Requested Attorneys' Fees Should Be Approved as Fair and Reasonable.</u>

Collective Counsel should be awarded their requested fee of one-third of the settlement fund. The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b). "Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Kapolka*, 2019 WL 5394751, at *7. "In determining what constitutes a reasonable percentage fee award, a district court must consider several factors, 'many of which are similar to the *Girsh* factors' discussed above." *Id.* (quoting *In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Those factors are:

> 1) the size of the fund created and the number of beneficiaries; 2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel; 3) the skill and efficiency of the attorneys involved; 4) the complexity and duration of the litigation; 5) the risk of nonpayment; 6) the time devoted to the case by plaintiffs' counsel; 7) the awards in similar cases; 8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; and 9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained.

*Kapolka*, 2019 WL 5394751, at *7. These factors are satisfied for the following reasons:[5]

*First*, the requested fee of one-third of the Total Settlement Amount ($761,408.33) falls well within the range of awards typically granted for funds of a similar size. *See Kapolka*, 2019

---

[5] "These fee award factors need not be applied in a formulaic way . . ." *Arrington v. Optimum Healthcare IT, LLC.*, 17 Civ. 3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018).

WL 5394751, at *8 (collecting cases and noting that "[fee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000 to $6.5 million" (internal quotation marks omitted)). The Total Settlement Amount is not a "mega-fund" that would require a reduction in the requested percentage because it is grossly disproportionate to the "efforts of counsel." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 337 (D.N.J. 2002).[6]

*Second*, none of the current opt-ins have stated any objection or disappointment in the terms of the Settlement.

*Third,* Collective Counsel is experienced and nationally recognized for their expertise in litigating complex class and collective actions, including wage and hour cases like this one. (Exh. C, Stoops Decl. at ¶¶ 3-7; Exh. D, Melmed Decl. at ¶¶ 3-7; Exh. E, Levy Decl. at ¶¶ 4-6). Likewise, Defendant is represented by experienced wage and hour litigators from preeminent defense firm Morgan, Lewis & Bockius LLP.

*Fourth*, the requested fee award is reasonable in light of the risks of nonpayment that Collective Counsel faced. Collective Counsel took this case on a contingent basis, meaning that there was a substantial risk that they would not be paid. (Exh. C, Stoops Decl. at ¶¶ 47-50). Collective Counsel would have faced significant legal hurdles in proving liability and damages and "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566,

---

[6] "As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *In re Cendant Corp.*, 232 F. Supp. 2d at 337. "The Circuit has explained that the 'basis for this inverse relationship is the belief that 'in many instances [such as, for example, certain "mega-funds"] the increase [in recovery] is merely a factor of the size of the class' and has no direct relationship to the efforts of counsel.'" *Id.* (quoting *In re Prudential*, 148 F.3d at 339) (second modification in original). However, settlement awards less than $54 million are not mega-funds. *Id.*

570 (7th Cir. 1992) (Posner, J.); *Keller*, 2014 WL 5591033, at *15 (finding factor weighed in favor of the requested fee where "there was some risk that Plaintiffs' claims would fail").

*Fifth*, with respect to the complexity of the litigation and settlement, regular rate claims present complex issues usually addressed only by the most experienced wage and hour litigators. The claims present multiple unique legal issues related to how to characterize multiple pay codes (discretionary or non-discretionary) and require complex week-by-week damage calculations as well as complicated off sets to account for double time and similar payments not required by law. Further, the off-the-clock donning and doffing claims are among the most difficult to prove because there are often no or very few written records identifying the alleged off-the-clock time.

*Sixth*, Collective Counsel consisted of a team of attorneys from three law firms, paralegals, and staff all dedicated to working up and prosecuting the Settlement Collective Members' claims. This work included investigation and interviews with the Named and opt-in Plaintiffs, obtaining survey data from opt-in Plaintiffs, reviewing pay data and records produced by Defendant, engaging in extensive settlement negotiations, and participating in mediation to try to settle this matter. Collective Counsel have spent significant time – collectively 329.05 hours – investigating, litigating, and working toward the resolution of these claims. (Exh. C, Stoops Decl. at ¶¶ 40-46). Collective Counsel estimate that they will also devote additional hours – incurring additional lodestar in the amount of $15,000 to $25,000 -- to settlement-related tasks, including communicating with Collective Collective Members and monitoring the claims process, after the Court approves the settlement. (*Id*. at ¶ 46).

*Seventh*, Collective Counsel's requested award of one-third of the settlement fund comports with awards approved by other courts in the Third Circuit. *See Kapolka*, 2019 WL 5394751, at *10 ("Courts in the Third Circuit have approved FLSA collective and class action settlements providing

for fee awards of 20-45%") (collecting cases); *Arrington*, 2018 WL 5631625, at *10 (one-third of the gross settlement amount is reasonable in common fund cases); *Alvarez v. BI Inc.*, 2020 WL 1694294, at *7 (E.D. Pa. Apr. 6, 2020) (approving fee award of 40% of the gross settlement amount in FLSA collective action).

*Eighth*, "All benefits obtained by Plaintiffs through the proposed settlement can be attributed to the efforts of counsel, rather than to government agencies or other groups." *Kapolka*, 2019 WL 5394751, at *10.

*Ninth*, with respect to the "percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained," *Kapolka*, 2019 WL 5394751, at *7, the Named Plaintiff retained Collective Counsel pursuant to a 40% contingent fee agreement. (Exh. C, Stoops Decl. at ¶ 48). The requested 33 and 1/3% award is substantially lower than the negotiated contingent fee agreement.

*Finally*, although the Third Circuit has "suggested it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method," *see In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (quoting *In re Prudential*, 148 F.3d at 333), courts need not engage in a lodestar inquiry with "mathematical precision" and can instead "rely on summaries submitted by the attorneys" rather than "actual billing records." *Id.* at 306-307. Here, Collective Counsel have provided summaries of their billing rates and hours and lodestar calculations using each firm's standard hourly rates. (Exh. C, Stoops Decl. at ¶¶ 40-42). The requested $761,408.33 fee will result in a multiplier falling in the range of 3.23 to 3.37. (Exh. C, Stoops Decl. at ¶ 46). This number is "well within the [1.0 to 4.0] range frequently awarded in common fund cases in this Circuit." *Keller*, 2014 WL 5591033, at *16 (approving multiplier "slightly above 3" and noting that multipliers "within the range of one to four [are] frequently

awarded in common fund cases in the Third Circuit" (citing *In re Prudential*, 148 F.3d at 341));

*Arrington*, 2018 WL 5631625, at *10 (approving multiplier of 5.3 and noting that counsel "should

not be penalized for settling the case early in the litigation").

## VI.   Collective Counsel is Entitled to Recover Their Reasonable Litigation Expenses.

In addition to being entitled to reasonable attorneys' fees, the FLSA provides for the

reimbursement of litigation expenses. *See* 29 U.S.C. § 216(b). "[C]ounsel in common fund cases

is entitled to reimbursement of expenses that were adequately documented and reasonably and

appropriately incurred in the prosecution of the case." *In re CertainTeed Fiber Cement Siding*

*Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014); *see, e.g., Yong Soon Oh v. AT & T Corp.*, 225 F.R.D.

142, 154 (D.N.J. 2004) (approving reimbursement of costs including (1) "travel and lodging," (2)

"local meetings and transportation," (3) "depositions," (4) "photocopies," (5) "messengers and

express services," (6) "telephone and fax," (7) "Lexis/Westlaw legal research," (8) "filing, court

and witness fees," (9) "overtime and temp work," (10) "postage," and (11) "the cost of hiring a

mediator").

The Parties' Settlement Agreement provides for reimbursement of Collective Counsel's

litigation expenses in an amount not to exceed $13,000. (Ex. B at ¶ 3.1(A)). To date, Plaintiff's

Counsel has incurred litigation expenses in the amount of $11,321.67. (Exh. C, Stoops Decl. at ¶

55). The litigation expenses relate to filing fees, service fees, and Plaintiff's portion of the

mediator's fees ($10,300). All of the litigation expenses were reasonable and necessary for the

successful prosecution of this case. (*Id.* ¶ 58).

## VII.   The Settlement Administration Fees Should Be Approved.

The Settlement Collective Members will be serviced by professional services provider

RG/2 Claims Administration LLC ("RG/2"), who will serve as settlement administrator. (Exh. C,

Stoops Decl. at ¶ 52). RG/2 has been approved by Courts across the country and is perhaps the leading settlement administrator for class actions in the country. (*Id.*).

Estimates provided by RG/2 indicate that settlement administration for this partial settlement will not exceed $68,476. The amount is reasonable given the number of individuals involved in the Settlement. (*Id.* at ¶ 53).

## CONCLUSION

Plaintiff moves this Court for entry of the proposed Order Approving the Settlement Agreement, attached hereto as Exhibit A, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses the instant action initially without prejudice until all payments have been made under the Parties' Settlement Agreement, with the dismissal to be with prejudice automatically after the Parties file copies of the deposited or cashed settlement checks that will serve as opt-in consent forms; (4) approve as to form and content the settlement notice; and (5) appoint a settlement administrator to exercise the duties and perform the services set forth in the Parties' Settlement Agreement.

Date: October 17, 2025                    Respectfully submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com

Adam S. Levy (PA Attorney No. 66866)
**Law Office of Adam S. Levy, LLC**
P.O. Box 88
Oreland, PA 19075
(267) 994-6952
adamslevy@comcast.net

Jonathan Melmed (CA SBN 290218)

20

Meghan Higday (332908) (CA SBN 334626)
**Melmed Law Group, P.C.**
1801 Century Park East, Suite 850
Los Angeles, CA 90067
(310) 824-3828
jm@melmedlaw.com
mh@melmedlaw.com

*Attorneys for Plaintiff and the Proposed Collective*

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2025, I electronically filed a copy of the foregoing. Notice of this filing will be sent to all parties via the Court's electronic filing system. Parties may access the filing through the Court's system.

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)